IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CATHLEEN CARPENTER<br>347 Bassett Road<br>Bay Village, Ohio, 44140<br><br>   Plaintiff,<br><br>vs.<br><br>NLCI PROPERTY MANAGEMENT, LLC<br>d.b.a NEO Landscape Management<br>c/o Roger Nair, Statutory Agent<br>P.O. Box 70<br>Brunswick, Ohio, 44212<br><br>   -and-<br><br>ROGER NAIR<br>2352 Pearl Road<br>Medina, Ohio 44256<br><br>   Defendants. | CASE NO:<br><br> JUDGE<br><br>COMPLAINT FOR VIOLATIONS<br>OF THE FAIR LABOR<br>STANDARDS ACT AND THE<br>OHIO MINIMUM FAIR WAGE<br>ACT<br><br>(Jury Demand Endorsed) |

Plaintiff Cathleen Carpenter, by and through undersigned counsel, as her Complaint against Defendants, state and aver the following:

## PARTIES

1. Carpenter is a resident of Bay Village, county of Cuyahoga, State of Ohio.

2. NLCI Property Management, LLC ("NLCI") is an Ohio limited company that lawfully conducts business in the state of Ohio, and which maintains its principal place of business at 2352 Pearl Road, Medina, Ohio, 44256.

3. During all times material to this Complaint, NCLI was Plaintiff's "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

4. At all times referenced herein, Nair was the owner, president, CEO, and/or principal of NCLI.

5. During all times material to this Complaint, Nair supervised and/or controlled Plaintiff's employment, and acted directly or indirectly in the interest of NCLI in relation to its employees, and was an employer within the meaning of section 3(d) of the FLSA.[1]

6. During all times material to this Complaint, Nair had control over the day to day operations of NCLI, to include how NCLI paid Carpenter.

## JURISDICTION AND VENUE

7. This court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Carpenter is alleging a Federal Law Claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

8. This Court has supplemental jurisdiction over Carpenter's state law claims pursuant to 28 U.S.C. § 1367 as Carpenter's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because it is the district court for the district, division, and counties within the Defendants operate and conduct business, and within which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS

10. NCLI is a landscaping and property management company.

11. NCLI currently holds itself out as "NEO Landscape Management."

12. NCLI forms a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

13. Upon information and belief, at all times material to the Complaint, NCLI had a gross volume of sales made or business done of at least $500,000.00.

14. Carpenter was hired by NLCI as a Sales Manager on or around November 1, 2015.

15. Carpenter did not have the power to hire and fire employees.

---

[1] See *Mitchell v. Chapman*, 343 F.3d 811, 827-28 (6th Cir.2003).

The Employee's Attorney.™ 

16. Carpenter never hired any employees.

17. Carpenter never fired any employees.

18. Carpenter did not have any input into hiring or firing decisions at NLCI.

19. Carpenter did not perform work related to the management or general business operations of NLCI.

20. Carpenter's primary job duties did not include the exercise of discretion and independent judgment with respect to matters of significance.

21. At the time Carpenter was hired, she entered into an oral contract with Defendants that set out her compensation at a fixed case salary of $30,000.00 annually, plus commissions and expense reimbursements ("Contract").

22. Pursuant to the Contract, Carpenter was to receive a two percent commission on renewals and upsells, and a four percent commission on new contracts.

23. Carpenter's salary was intended to compensate her for the first 40 hours she worked in any given week.

24. Carpenter's salary was not intended to compensate Carpenter for any hours she worked greater than 40 hours per week.

25. At all times material to the Complaint, all Carpenter's income came from her salary and from expense reimbursements.

26. Defendants never paid Carpenter any commissions.

27. At the time Carpenter was hired, Defendants told her she was considered an independent contractor.

28. Carpenter's work was integral to NCLI's business.

29. Carpenter's employment was not temporary and had no fixed end-date.

30. Carpenter was treated as an at-will employee.



31. Carpenter was not required to use managerial skills to realize a profit or a loss; she was paid the same salary throughout her entire period of employment.

32. Carpenter was economically dependent on NCLI and did not invest her own money, equipment, or supplies into the business.

33. Carpenter's job duties did not require special skills besides sales skills.

34. At all times material to the complaint, Defendants controlled Carpenter's employment.

35. Carpenter was not conducting her own business while in the employ of Defendants.

36. Despite being labeled by Defendants as an independent contractor, Carpenter was in reality a non-exempt employee under the FLSA.

37. Defendants told Carpenter that she was an independent contractor so they could avoid making overtime payments to Carpenter.

38. Carpenter's primary job duties included making cold calls from NCLI's offices or from her home and making sales, collecting past due payments from customers, going to networking events on behalf of NLCI, transporting blueprint plans and documents from Nair's personal home to NLCI's office, picking up office supplies, and performing other errands, such listing used items and equipment for sale on the internet.

39. At all times material to the Complaint, Carpenter was individually covered by the FLSA because Carpenter, sold, or otherwise used goods or materials that *have been* moved in or produced for commerce, made telephone calls across state lines to solicit, accept, and process payments, and listed items for sale on the internet on commercial websites which are located out of state.

40. Carpenter regularly worked in excess of 40 hours per week during her employment with NLCI.

41. Defendants were aware Carpenter worked in excess of 40 hours per week without compensation.

42. Despite their knowledge that Carpenter worked in excess of 40 hours per week, Defendants failed to pay Carpenter overtime.



43. Because Defendants told Carpenter that she was independent contractor and paid her a salary, Carpenter was not aware that she was entitled to overtime for any hours she worked in excess of 40 per week.

44. On or around September 28, 2016, Carpenter requested her paycheck, which was late and owed to Plaintiff.

45. On or around September 29, 2016, Carpenter was subjected to a stress test for health problems she was experiencing.

46. Carpenter experienced an adverse reaction to the drugs and radioactive dye that had been administered to her as part of the stress test.

47. On or around September 30, 2016, NCLI's General Manager, Bryan Billman, notified Carpenter that she would have to come to NCLI's offices to get her paycheck.

48. Because Carpenter was too ill to drive, she had a friend named Aaron drive her to NCLI's offices.

49. When Carpenter arrived at NCLI's offices, she sent Billman a text message that she had arrived.

50. Carpenter asked Billman if someone could bring her check to her while she waited in Aaron's car.

51. Billman refused Carpenter's request and said that she need to come inside NCLI's offices.

52. Carpenter again advised Billman she was too ill and could not come in to NCLI's offices.

53. Billman then relented and walked to where Carpenter was waiting in Aaron's car.

54. Billman then presented Carpenter with a "confidential separation agreement and release."

55. The confidential separation agreement and release provided that Carpenter would receive a severance of $4,943.04 ("Severance Payment").

56. Billman forced Carpenter to sign the confidential separation agreement and release by threatening to withhold her paycheck unless she signed.



57. At the time Carpenter signed the confidential separation agreement and release, Carpenter did not have the capacity to enter into a contract due to the effects of the medication and radioactive dye she had been administered less than 24 hours beforehand.

58. Carpenter signed the confidential separation agreement and release under duress.

59. Although the confidential separation agreement and release purported to release all claims brought under the FLSA, the confidential separation agreement and release was not reviewed or approved of by the Department of Labor or by any court.

60. The confidential separation agreement and release contained a seven-day revocation period.

61. On October 6, 2016, Carpenter exercised her rights under the revocation clause of the confidential separation agreement and release, and advised Defendants she intended to utilize the 21 days provided for in the confidential separation agreement and release to consider whether to accept the severance payment.

62. Carpenter returned the Severance Payment to Defendants on October 7, 2016.

63. On October 20, 2016, Carpenter provided Defendants with formal notice that she had rejected the confidential separation agreement and release and would retain the right to bring any and all claims she may have against Defendants.

64. As of the filing of this instant Complaint, Defendants have failed to pay Carpenter for any commissions she is due, or to reimburse Carpenter for her expenses during the month of September, 2016.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT

67. Carpenter restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

68. During all times material to this complaint, Carpenter was not exempt from receiving overtime compensation.



69. During all times material to the complaint, Defendants knew that Carpenter was regularly working in excess of forty hours per week.

70. During all times material to this Complaint, Defendants violated the FLSA with respect to Carpenter by failing to compensate her at time-and-one-half her regular rate of pay for any hours she worked in excess of forty hours per workweek.

71. Defendants knew that they were required to pay Carpenter overtime compensation at a rate of one and one-half her regular rate of pay for hours worked in excess of forty hours per workweek.

72. In violating the FLSA, Defendants acted willfully, without a good faith or reasonable basis and in reckless disregard of clearly applicable FLSA provisions.

73. As a direct and proximate cause of Defendants' conduct, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Carpenter for the full amount of the required overtime wage rate, an additional equal amount as liquidated damages, and costs and reasonable attorney fees.

## COUNT II: VIOLATION OF THE OHIO WAGE ACT

74. Carpenter restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

75. The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek including payment of all earned overtime compensation. *See* O.R.C. §§ 4111.01, *et seq*.

76. During all times material to this Complaint, Defendants were covered employers required to comply with the Ohio Wage Act's mandates.

77. During all times material to this Complaint, Carpenter was a covered employee entitled to individual protection of Ohio Wage Act.

78. Defendants violated the Ohio Wage Act with respect to Carpenter by failing to pay Carpenter overtime compensation for any hours worked over 40 in a week.

The Employee's Attorney.™ 

79. In violating the Ohio Wage Act, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio Wage Act provisions.

80. As a direct and proximate cause of Defendants' conduct, pursuant to R.C. 4111.10, Defendants are liable to Carpenter for the full amount of the required overtime wage rate, as well as costs and reasonable attorney fees.

### COUNT III: BREACH OF CONTRACT

81. Carpenter restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

82. In November of 2015, Carpenter and Defendants entered into a valid contract.

83. Carpenter performed all of the conditions, covenants, and promises required in accordance with the terms and conditions of the contract.

84. Defendants did not perform their obligation under the contract to pay Carpenter commissions.

85. Defendants breached the November 2015 contract.

86. As a direct and proximate result of Defendants' breach, Carpenter suffered and will continue to suffer damages.

### COUNT VI: UNJUST ENRICHMENT

87. Carpenter restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

88. In performing the duties of a Sale Manager for Defendants, Carpenter conferred a benefit upon Defendants for which Defendants promised to pay Carpenter a base salary and commissions, along with other compensation.

89. Defendants knew that Carpenter performed the duties of a Sale Manager for Defendants.

90. Defendants failed to pay Carpenter the commissions they promised to pay her.



91. Defendants retained the benefit of Carpenter's performance of the duties of a Sale Manager under circumstances where it was unjust to do so.

92. As a result of Defendants' acts, Carpenter suffered, and will continue to suffer, pecuniary harm.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Cathleen Carpenter demands from Defendants the following

(a) For an award against Defendants of unpaid wages to Carpenter, to be determined at trial together with any liquidated damages allowed by FLSA;

(b) An award against Defendant of compensatory and monetary damages to compensate Carpenter for unpaid overtime compensation, unpaid wages, back pay, front pay, and other consequential and/or liquidated damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of reasonable attorney's fees and non-taxable costs for Carpenter's claims as allowable under law;

(d) An award of the taxable costs of this action;

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,



*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Cathleen Carpenter*

## JURY DEMAND

Plaintiff Cathleen Carpenter demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**

10

